I concur in part and dissent in part with the opinion of the majority in the matter before us. Specifically, I concur with the majority in overruling assignments of error II through VI.
However, I dissent from the following determinations expressed by the majority in sustaining assignment of error I: (1) defendant did not have constructive possession of the heroin and cocaine seized by the authorities prior to the controlled delivery and (2) defendant did not knowingly possess the heroin and cocaine seized by the authorities prior to the controlled delivery.
The majority concedes "* * * the mere fact that the authorities have removed contraband from a package prior to when a defendant exercises dominion and control over the package does not preclude the defendant from constructively possessing the contraband removed from the package." Thus, the first issue is whether defendant constructively possessed the bulk amount of the cocaine and heroin prior to its removal from the package.
Constructive possession exists when an individual exercises dominion and control over an object. State v. Barr (1976),46 Ohio St.2d 316. Circumstantial evidence is sufficient to support the element of constructive possession, Jenks at 273, but constructive possession cannot be inferred by a person's mere presence in the vicinity of contraband. Cincinnati v. McCarthy
(1971), 30 Ohio App.2d 45.
The majority reasoned defendant did not have constructive possession of the package before he took actual possession of it because it was not addressed to him, he did not inquire to anyone as to its whereabouts or delivery, and did not try to direct its delivery. I believe the following case law and a more expansive reading of the facts indicates there was sufficient evidence to show defendant constructively possessed the package.
A case directly on point and cited by the majority is State v.Williams (1996), 117 Ohio App.3d 488. In Williams, the police intercepted a package, discovered cocaine inside, and replaced the cocaine with a "dummy kilo." Thereafter, a friend of William's inquired about the package and picked it up. The friend was arrested and agreed with the police to make several phone calls to Williams regarding the package. Despite the fact that Williams never actually possessed the package, the court found that he constructively possessed the original amount of drugs in the package based on directing his friend to pick up the package and the telephone calls exchanged with his friend concerning the package.
Likewise, in United States v. Quesada (Sept. 4, 1991), Tenth Circuit, No. 90-2124, unreported, also a case cited by the majority, the authorities intercepted a package, discovered cocaine inside, and substituted sugar for the drugs. Quesada arrived at the post office and presented a tracking number for the package. He then took possession of the package and was arrested a short time later while proceeding to his apartment. The court found "the jury could reasonably have found that Mr. Quesada had constructive possession of the full 997.2 grams of cocaine because he had the eleven digit tracking number which permitted him to claim, and thus exercise control over, the original package." See, also, United States v. Lewis, et al.
(April 21, 1998), Sixth Circuit, No. 96-3797/96-3798/36-3955 (constructive possession of bulk amount removed from package established where defendant called UPS to determine arrival time and co-defendants retrieved package); United States v. Zandi
(C.A. 4, 1985), 769 F.2d 229 (constructive possession of package containing drugs established where defendants acquired actual possession of shipping documents pertaining to the package);United States v. Martorano (C.A. 3, 1983), 709 F.2d 863
(constructive possession of drugs established when defendant received keys to van which contained drugs even though defendant never had physical possession of drugs).
In the present case, a controlled delivery was arranged by the authorities and the cocaine and heroin was removed and replaced with a smaller amount of drugs. Surveillance was established at the house and defendant was seen early in the day walking out of the residence down the driveway to the check the mailbox. During the controlled delivery, a federal agent, posing as a Federal Express delivery man, approached the residence. The agent entered the residence at the side door and was immediately met by defendant, who was walking down the stairs. The agent testified he said "I've got a package for __" and deliberately stopped speaking in order to determine the involvement of the person accepting the drugs. The agent said defendant responded "Jean Brown." The agent stated defendant was "very anxious to get" the package and kept reaching for it during the exchange. Defendant then signed his own name to the Federal Express form and took possession of the package.
A short time later, the SWAT team entered the premises and found the unopened package. Defendant was present and was arrested. Five different policeman testified defendant indicated he stayed in the east bedroom of the residence. Another officer stated during the raid the lessee showed up, an elderly woman, and she said she was not a permanent resident but only stayed at the residence two or three times a week; suggesting defendant was the real tenant. A search of the east bedroom turned up the following: a .38 caliber revolver, over $18,000 in cash, cellular phone, plastic bags, two scales, and additional amounts of cocaine and heroin. Also during the raid, an officer said the phone rang and an individual called who was interested in the delivery of the package. The officer said this individual called an additional two times and showed up at the residence with a lot of cash and a cell phone and was then arrested. Moreover, two police detectives stated a search for Jean Brown, the name on the package, revealed that no Jean Brown lived on the premises or was involved with the premises.
Applying the case law to these facts it is clear there was sufficient evidence defendant constructively possessed the bulk amount of the drugs. The above cited cases establish constructive possession based on a nexus between the package and the recipient. The cases held that telephone calls and directing an agent, an eleven digit tracking number, shipping documents, and keys to a van are sufficient evidence to establish a nexus and find constructive possession. In the present case, there are multiple facts which, considered aggregately, sufficiently establish a nexus: (1) the package was addressed to defendant's residence, (2) defendant took physical possession of the drug-laden package, (3) defendant signed his own name indicating he was responsible for the package, (3) defendant blurted out the fictitious name (Jean Brown) which appeared on the package without any prompting thus indicating he had the authority to claim the package, and (4) the police testified no Jean Brown lived at the premises or was associated with the premises. Being responsible for the package, having the authority to claim the package, having the package addressed to his residence, and knowing the fictitious name on the package, establishes a nexus and shows the package was de facto addressed and directed to defendant.
The majority maintains this evidence, construed in favor of the prosecution, is insufficient to find constructive possession. I disagree and believe the jury, a rational trier of fact, was correct in finding this evidence was sufficient to establish constructive possession.
The majority also claims defendant did not knowingly possess the bulk amount of the heroin and cocaine seized by the authorities prior to the controlled delivery. The majority maintains defendant only knowingly possessed the smaller amount of drugs in the package when he accepted delivery.
This reasoning is flawed because defendant could not have knowledge of the smaller amount of the drugs. He either had knowledge of the entire bulk amount of the drugs or no knowledge of the drugs at all. It is impossible for defendant to have knowledge of the smaller amount of the drugs because he never had an expectation that a smaller amount of drugs would be sent. If he knew the drugs were being sent then the package would have arrived at his residence unimpeded with the bulk amount. If he did not know the drugs were being sent, as he testified, then he believed no drugs were being sent to him. It simply is not possible that he had knowledge the package contained the smaller amount of drugs.
The majority does not cite any case law in support of its proposition that defendant only had knowledge of the smaller amount of drugs in the package. Moreover, my review of the relevant case law contravenes this proposition. Since constructive possession has already been established, the amount of drugs in the delivered package is irrelevant in terms of knowledge because the defendant's mens rea at the time he accepted the package related "back to the amount in the package at the time the police made the substitution." Williams, supra,
at 493. Therefore, the seminal issue is whether defendant had knowledge of the bulk amount of the drugs or no knowledge of the drugs at all.
In State v. Jones (Sept. 25, 1997), Cuyahoga App. No. 71178, a controlled delivery was set-up at Jones' home and Jones accepted the package containing the drugs. This court addressed the issue of knowledge of a controlled substance and found "the discovery of drug scales, pipes, plastic vials and plastic bags constituted evidence that established defendant's knowledge of the contents of the package." In the instant case, defendant indicated he stayed in the east bedroom and a search of that bedroom turned up drug scales, plastic bags, cocaine and heroin, a gun, and large amounts of cash. In addition, a search of the remainder of the premises turned up other items also common to the drug trade including a digital scale, a grinder, a re-rock bowl, a glass ashtray containing cocaine residue, pipes and vials, a plastic bag containing black tar heroin, and a fish bowl containing powdered lactose. This voluminous amount of evidence corresponds to this court's holding in Jones and establishes defendant had knowledge the contents of the package was the bulk amount of the drugs.
In United States v. Jackson (C.A.6 1995), 55 F.3d 1219, the police intercepted a package, discovered cocaine inside, and replaced the cocaine with a "sham substance." A controlled delivery was set up and Jackson took possession of the package. After Jackson took possession of the package a SWAT team entered the premises and he was arrested. The court found Jackson knowingly possessed the original amount of drugs in the package based on "circumstances evidencing a consciousness of guilt on the part of the defendant." Citing United States v. Diaz-Carreon
(5th Cir. 1990), 915 F.2d 951, 954. In support, the court cited several factors including Jackson's "keen interest in the arrival of the package" and his "implausible story why he agreed to accept the package." Jackson, supra, at 1226. See, also UnitedStates v. Phillips (5th Cir. 1974), 469 F.2d 1395 (less than credible explanation for a defendant's actions is part of the overall circumstantial evidence from which possession and knowledge may be inferred).
The facts in Jackson are almost identical to those in the present case which makes the reasoning applicable as well. As in Jackson, the instant defendant took a keen interest in the arrival of the package. He checked the mailbox earlier in the day. Then, later on, when he saw the agent, who posed as a Federal Express delivery man, approach the house he immediately greeted the agent before the agent even walked up the steps. Defendant blurted out Jean Brown, the fictitious name on the package, without any help from the agent. Plus, the agent stated defendant appeared very anxious and kept reaching for the package during the exchange.
Also analogous to Jackson, defendant's story is quite implausible. First, he testified he did not live on the premises. The facts contradict him. Police surveillance revealed defendant walked out of the residence early in the day to check the mailbox. Defendant stated he accepted delivery of airline tickets at the residence. Five different police officers stated defendant indicated he stayed in the east bedroom where the gun, drugs, cash, and drug paraphernalia were found. Plus, when the SWAT team entered the premises defendant was sitting on the couch drinking coffee and watching TV with an acquaintance. Second, defendant testified he was at the residence to do mechanics work on a car for a person who lived at the residence. Yet, on cross-examination, he admitted he was unemployed because he was disabled for two deteriorating discs and also has asthma. Third, defendant said he was on disability and was attempting to get social security. Yet, a search of his bedroom turned up over $18,000 in cash. Fourth, defendant testified the person for whom he was supposedly fixing the car told him to wait at the residence while she picked her daughter up from high school. This person also allegedly informed defendant to sign for a package if it was delivered but that she would probably be back in time for its delivery. However, this person never showed up at the residence with her daughter and this person was implausibly picking up her daughter in the middle of the day during normal high school hours.
The discovery of drugs and drug paraphernalia at defendant's residence, defendant's keen interest in the arrival of the package, and his implausible story, is sufficient evidence to show defendant had knowledge the package he accepted contained the bulk amount of the drugs.
Based on the above analysis, I believe the evidence sufficiently demonstrates defendant constructively possessed the bulk amount of the drugs and had knowledge the contents of the package contained the bulk amount. Therefore, I disagree with the disposition of assignment of error I in the majority opinion and agree with the trier of fact in finding defendant guilty of counts I and II.