JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Isaiah Harris appeals from his convictions and the sentence imposed after the trial court found him guilty of nine charges resulting from a police investigation of drug-related crimes committed in Lakewood, Ohio.
 {¶ 2} Harris presents two assignments of error. He claims his convictions for drug possession and drug trafficking, along with the included firearm specifications, are not supported by sufficient evidence. He further claims that his sentence must be vacated because the trial court told him he was receiving a total term of nine years, but imposed only eight years. *Page 2 
 {¶ 3} After a review of the record, this court concludes sufficient evidence supports Harris' drug convictions and the firearm specifications. Furthermore, although the trial court misstated Harris' total term during the sentencing hearing, the journal entry reflects the sentence it actually imposed, i.e., eight years. Thus, Harris suffered no prejudice from the trial court's misstatement. Consequently, both his convictions and his sentences are affirmed.
 {¶ 4} According to the testimony presented at trial, Harris came to the attention of the Lakewood police department when a "confidential informant" ("CI")[1] approached Det. James Motylewski on May 12, 2006. The CI, who previously had provided useful tips, asserted that a man named "Red" was selling crack cocaine from the Lakewood Club Apartments. The CI specifically indicated the address as 11850 South Lane Drive, No. 5.
 {¶ 5} Motylewski "ran the address" through the department computer system, and discovered that address had been provided by a man named Isaiah Harris in an earlier accident report filed with the police. Motylewski obtained Harris' driver's license photograph. The CI identified Harris as the man he knew as "Red." Further inquiry revealed Harris had a criminal record.
 {¶ 6} Motylewski at that point arranged a "controlled buy," using the CI. The CI purchased a rock of crack cocaine in the apartment. When he returned with it, the CI *Page 3 
told Motylewski that Harris and some others were present, but Harris' brother Michael had actually made the transaction with him.
 {¶ 7} Motylewski obtained a search warrant for the premises. He and his colleagues executed the warrant immediately after the CI made a second, larger, purchase inside, that time directly from "Red."
 {¶ 8} Motylewski and some other officers went in the front door of the apartment. While outside, Det. Jeffrey Capretto watched the apartment's second floor windows. As Capretto heard his colleagues enter, "a DVD case and three plastic bags came flying out the window" that belonged to that apartment's northwest bedroom. The person who tossed the items had "black" skin. The plastic bags contained crack cocaine.
 {¶ 9} Motylewski, in turn, found five people in that same bedroom, viz., Harris, his brother Michael, their cousin Theotis Williams, and two women. The women subsequently identified themselves as Adrienne Anderson and Amanda Kline.
 {¶ 10} In addition to the people in the room, Motylewski saw several pieces of crack cocaine on a green plate on the dresser. Next to Harris on the bed was a large amount of cash, some of which proved to be marked "buy money" provided earlier to the CI for his purchases. A digital scale also had been placed on the bed. Under the bed Motylewski found an unlocked security box that contained two guns and ammunition for the only gun that was in operable condition. *Page 4 
 {¶ 11} Harris and the others with him all were arrested. Later, Harris told Motylewski that he "rented" the bedroom from the apartment's leaseholder, Charles Eungard.
 {¶ 12} Harris subsequently was indicted along with five co-defendants. Harris was charged with five counts of trafficking in crack cocaine, four counts of possession of crack cocaine, one count of possession of criminal tools, and one count of having a weapon while under disability. Each of the drug charges also contained a one-year firearm specification.
 {¶ 13} Harris elected to have his case tried to the bench. After the state presented its case-in-chief, the court granted Harris' motions for acquittal on two counts of drug trafficking. Harris presented the testimony of two of his co-defendants, viz., his brother and Amanda Kline. Harris also testified in his own behalf.
 {¶ 14} Ultimately, the trial court found Harris guilty of the remaining charges. It sentenced him to a year for the firearm specifications, to be served prior to and consecutive with concurrent terms for the other counts; the term, as set forth during the sentencing hearing, totaled eight years. The journal entry of sentence is consistent with this total.
 {¶ 15} Harris presents the following two assignments of error for review.
"I. Isaiah Harris' conviction was not reached by a standard of proof beyond a reasonable doubt. *Page 5 
"II. Isaiah Harris' sentence was pronounced and upon summarizing it and docketing it, the sentence was incorrectly calculated, being a (sic) plain error."
 {¶ 16} In his first assignment of error, Harris argues that the evidence presented by the state at trial was insufficient to establish his guilt on either the drug charges or the firearm specifications.[2]
He contends that since: 1) others were present in the bedroom; 2) no one testified he threw the items from the window; 3) he was not the leaseholder of the apartment; and 4) no one either saw or heard him make drug transactions, the state failed to prove he "possessed" the contraband items and "trafficked" in drugs.
 {¶ 17} In reviewing a claim of insufficiency, a court must examine the evidence submitted at trial to determine whether, if believed, reasonable minds could reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261. The evidence must be viewed in a light most favorable to the prosecution. State v.Martin (1983), 21 Ohio App.3d 172, 175.
 {¶ 18} In addition to possession of crack cocaine and a firearm, Harris also was charged with the knowing "preparation" of drugs for "distribution." Possession of a thing may be actual or constructive. Moreover, circumstantial evidence has the same *Page 6 
probative value as direct evidence. State v. Jenks (1991),61 Ohio St.3d 259, 272. In this case, the state presented circumstantial evidence that Harris constructively possessed the contraband items and also trafficked in drugs. State v. Lavender (Mar. 12, 1992), Cuyahoga App. No. 60493.
 {¶ 19} The mere presence of a defendant "in proximity to" contraband may be insufficient to support a conviction for possession. State v.Haynes (1971), 25 Ohio St.2d 264, 270. However, if the evidence demonstrates the defendant is able to "exercise dominion or control" over it, he can be convicted of possession. State v. Wolery (1976),46 Ohio St.2d 316. Similarly, testimony that the drugs have been packaged in usable amounts constitutes evidence of a defendant's preparation of them. State v. Washington, Cuyahoga App. No. 80418, 2002-Ohio-5834.
 {¶ 20} In this case, the testimony and physical evidence established every element of the offenses. Capretto testified that as the other police officers entered the apartment, three plastic bags were thrown by a "black" person from the northeast bedroom window. Adrienne Anderson testified that Harris "lived in" that particular bedroom, that each time someone knocked at the apartment door Harris answered, that each time Harris returned with money in his hand, and that when the police burst into the apartment, Harris had been about to answer their knock, but "came flying back in" the bedroom and ran "towards the window." *Page 7 
 {¶ 21} Motylewski testified that the three plastic bags Capretto recovered outside each contained crack cocaine; "each rock was individually wrapped." Motylewski further testified that Harris had provided that address as his residence. Additionally, Motylewski indicated that, as Harris sat on the bed, he was surrounded by approximately eight hundred dollars in cash, some of which was police "buy money," and a digital scale, that the seven rocks on the plate were in plain view on Harris' dresser, and that the box with the guns inside was under the bed. Harris admitted he was aware of the guns' location.
 {¶ 22} On similar facts as presented herein, this court has determined a defendant's convictions for possession of contraband and trafficking in drugs were properly supported by sufficient evidence. Id.; State v.Greene, Cuyahoga App. No. 87589, 2006-Ohio-5604; State v. Porter, Cuyahoga App. No. 81123, 2002-Ohio-6054; State v. Curry, (Dec. 17, 1992), Cuyahoga App. No. 63438.
 {¶ 23} Accordingly, Harris' first assignment of error is overruled.
 {¶ 24} Harris argues that his sentence is improper in his second assignment of error. He contends the trial court committed error when it outlined the individual terms it was imposing, but added those terms incorrectly. The trial court thus mistakenly stated the total was "nine years" rather than eight years.
 {¶ 25} Although Harris is correct that the trial court misstated the total term, the record reflects he suffered no prejudice. In imposing sentence, the transcript *Page 8 
demonstrates the trial court informed him that he was sentenced to "one year" on the firearm specifications, that term to be served prior to and consecutive with concurrent terms as follows: "eight months" on each of counts two and three, "seven months" on count eight, "one year" on each of counts five, six and seven, "three years" on count eleven, and "seven years" on each of counts nine and ten. The total term was thus eight years.
 {¶ 26} Thereafter, the trial court made a mistake in addition when it asserted the total was "nine" years. The journal entry of sentence, however, correctly set forth the total as eight years.
 {¶ 27} Under the circumstances, since Harris received appropriate notification that his total sentence was eight years, and the journal entry reflects that sentence, Harris suffered no prejudice, and the trial court committed no error that this court must correct.
 {¶ 28} For that reason, Harris' second assignment of error also is overruled.
 {¶ 29} Harris' conviction and sentence are affirmed. It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having *Page 9 
been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and MELODY J. STEWART, J., CONCUR.
[1] Quotes indicate testimony presented at trial.
[2] Harris does not present any argument with respect to his convictions for either possession of criminal tools or having a weapon while under disability. *Page 1